IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NELSON RAMOS-RODRIGUEZ

    Plaintiff,

           v.

COMMISSIONER OF SOCIAL SECURITY

    Defendant.

**Civil No. 11-1323 (SEC)**

**OPINION AND ORDER**

    Plaintiff Nelson Ramos-Rodriguez ("Plaintiff") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Commissioner of the Social Security Administration's (the "Commissioner") denial of his application for disability insurance benefits (Docket # 1). Plaintiff filed a memorandum of law supporting his request (Docket # 8), and the Commissioner opposed (Docket # 9). After reviewing the filings and the applicable law, the Commissioner's decision denying disability benefits is **AFFIRMED**.

**Factual and Procedural Background**

    After injuring his lower back in a work-related accident (Tr. 182), on November 7, 2006, Plaintiff filed an application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 301 et seq., where he claimed to have been disabled since March 15, 2002. Id. at 125. On his disability report, Plaintiff explained that he suffered from a painful lower-back condition and depression. Id. at 130. The application for disability benefits was denied initially and again upon reconsideration. Id. at 62-66, 77-78.

    Plaintiff then sought a hearing before an administrative law judge ("ALJ"), which was held on August 11, 2008. Id. at 87, 25. At the hearing, Plaintiff, who was represented by counsel, appeared and testified. Id. at 25-48. The ALJ ultimately concluded that Ramos-Rodriguez had not been disabled, because step four of the sequential analysis showed that he could do his past relevant work as an "aircraft technical inspector." Id. at 12-24.

**CIVIL NO. 11-1323 (SEC)**                                                              Page 2

To reach his conclusion, the ALJ compared Plaintiff's medical history with his hearing testimony. The medical history included records from at least four treating sources: (1) Progress notes from the San Juan Veterans Administration Medical Center; (2) Zaida Boria, M.D., a consulting neurologist; (3) Acisclo Marxuach, M.D., a consulting physician; and (4) Carmen Pineiro, M.D., a psychiatrist who evaluated Plaintiff. The following excerpts from the ALJ's memorandum of opinion best illustrate the ALJ's methodology and findings:

> After careful consideration of the entire record, I find that the claimant ha[s] the [RFC] to perform light work (lift and/or carry 20 pounds occasionally, and frequent 10 pounds). He can sit, stand and/or walk about 6 hours in an 8 workday. He is not limited in pushing and/or pulling, including the operation of hand and/or foot controls, with his upper and lower extremities. He can frequently balance and kneel, but only occasionally climb, stoop, crouch, and crawl. He has no visual, communicative, or environmental limitations. From the mental standpoint, the claimant can learn, understand, remember, executive simple to more detailed instructions and task. He can maintain attention and concentration for at least two hour intervals. He can adapt to and deal with changes in work settings and environments.

> The claimant's condition may produce some of the symptoms alleged by him but not at the severity or intensity indicated. Thus, considering his physical condition, I conclude that the pain is not of such frequency or duration as to be disabling. Basically, it is found that heavy lifting or carrying may worsen his condition but otherwise he should function adequately . . . . In fact, at the hearing, he answered the questions adressed to him without hesitations and a mental condition that would affect the performance of basic work activities was not evident . . .

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

Tr. 21, 22 & 23.

Dissatisfied, Plaintiff appealed. But the Appeals Council denied his request for review on March 8, 2011, making the ALJ's decision the final decision of the Commissioner and, therefore, subject to judicial review. Id. at 1. This complaint followed. Docket # 1. Plaintiff attacks the ALJ's conclusion on three grounds, arguing that the ALJ (1) erred in concluding that Plaintiff could do "[h]is past job as he did it and it is generally done in the national economy"; (2) improperly calculated his Residual Function Capacity ("RFC"); and (3) failed to conclude that he was unable to "[d]o any other job." Docket # 8, pp. 3-4. The Commissioner opposed all of Plaintiff's contentions. Docket # 9.

**Standard of Review**

The scope of review over the Commissioner's final decision is limited both by statute and case law. See 42 U.S.C. § 405(g). Section 405(g) provides that the findings of the Commissioner "as to any fact, if supported by substantial evidence, shall be conclusive . . . ." In Richardson v. Perales, 402 U.S. 389, 401 (1971), the United States Supreme Court defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." The First Circuit has therefore directed district courts within this circuit to uphold the Commissioner's "findings ... if a reasonable mind, reviewing the evidence as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991). Accordingly, even if the record could justify a different conclusion, the Commissioner's findings must be affirmed if supported by substantial evidence. Evangelista v. Secretary of H.H.S., 826 F.2d 136, 144 (1st Cir. 1987). That is, absent a legal or factual error in the evaluation of a claim, the Commissioner's denial of disability benefits stands. Sullivan v. Hudson, 490 U.S. 877, 885 (1989); Seavey v. Barnhart, 276 F.3d 1, 15 (1st Cir. 2001); Manso-Pizarro v. Secretary of H.H.S., 76 F.3d 15, 16 (1st Cir. 1996).

**CIVIL NO. 11-1323 (SEC)**                                                                 Page 4

**Applicable Law and Analysis**

For ease of analysis, the Court addresses Plaintiff's second argument first: that the ALJ improperly calculated his RFC. Specifically, Plaintiff contends that "[t]he medical evidence . . . contain[s] clinical findings that show more severe physical and metal impairments than what the ALJ wants to admit." Docket # 8, p. 13. Further, he maintains that the ALJ ignored the credibility of his "complaints as well as his testimony." Id. at 14. He also advances other minor and unavailing contentions.[1] For the reasons set forth below, the ALJ committed no reversible errors.[2]

As to whether the ALJ erred in evaluating the credibility of Plaintiffs' subjective pain complaints, suffice it to say—as correctly alleged by the Commissioner—that the ALJ had no obligation to accept such allegations at face value. "In weighing the evidence and evaluating the claimant's credibility, the ALJ is entitled to consider the consistency and inherent probability of the testimony." Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 194 (1st Cir. 1987) (per curiam). A review of the record shows that, after carefully considering Plaintiffs'

---

[1] Plaintiff's one-sentence contention that the ALJ "[d]id not give proper weight to the treating physician's medical opinions," Docket # 8, 13, is neither developed nor supported by the record. "[I]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." King v. Town of Hanover, 116 F.3d 965, 970 (1st Cir. 1997) (citations and internal quotations marks omitted).

[2] Plaintiff makes much of the fact that the ALJ contradicted himself by first saying that he could lift no more than 20 pounds, but later stating that he could not lift more than 25 pounds. Docket # 8, p. 13 (citing Tr. 22-23). But such clerical mistake is of no consequence because, as illustrated below, the ALJ correctly found that Plaintiff could perform his past relevant work as generally performed, which according to the DOT, only required occasional lifting of 20 pounds. See Tr. 24; DOT No. 621.261-018, 1991 WL 685290. In all events, a review of Plaintiff's medical records shows that the ALJ's mix up is overshadowed by the above-cited correct finding, which is in turn supported by substantial evidence. Remand due to this harmless error is thus unwarranted. See Ward v. Commissioner of Social Security, 211 F.3d 652, 656 (1st Cir. 2000) (holding that "[r]emand is not essential if it will amount to no more than an empty exercise").

**CIVIL NO. 11-1323 (SEC)**                                                                                   Page 5

testimony, the ALJ reasonably found his testimony regarding the intensity, persistence, and limiting effects of his symptoms to be exaggerated. See, e.g., Tr. 23 ("[Plaintiff] answered well the questions addressed to him. He was articulated and represented himself well. There was no evidence or clues that he was in pain or mentally affected to the extended alleged." ). The ALJ's decision not to give significant weight to Plaintiff's subjective complaints fell within his sound discretion, because "[s]ubjective symptoms must be evaluated with due consideration for credibility, motivation and medical evidence of impairment." Gray v. Heckler, 760 F.2d 369, 374 (1st Cir. 1985) (per curiam) (citing Alvarado v. Weinberger, 511 F.2d 1046, 1049 (1st Cir. 1975) (per curiam)). Therefore, the ALJ's decision contains enough reasons for the credibility finding, and is "[s]ufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7P, 1996 WL 374186, at *2.

Plaintiff alludes to his disability report, making reference to lower back sciatic nerve pain, limited capacity for seating and standing, pain in right shoulder, need for a cane to walk, and depression. Docket # 8, p. 13 (citing Tr. 130). But the ALJ correctly found that such allegations were belied by objective examination findings that failed to show significant muscle weakness, fatigue, atrophy, or deformities or limitations of motion or sensory-motor deficits. Tr. 23, 317-18, 370-71. Similarly, the ALJ concluded, Plaintiff's pain complaints were contradicted by his relatively conservative course of treatment (no surgery was necessary), namely medication and physical therapy. Id. at 22-23. Citing Dr. Boria's report, the ALJ also noted that Plaintiff could walk without a cane. Id. at 22. Dr. Boria also opined that Plaintiff could sit, stand, walk, travel, and handle/lift objects weighing up to 20 pounds. Tr. 318.

For his part, Dr. Marxuach concurred with Dr. Boria's assessments. Id. at 329. As to Plaintiffs' allegations of disabling mental impairments, the ALJ correctly relied on various

**CIVIL NO. 11-1323 (SEC)**                                                                                          Page 6

progress notes stating that "[t]here was no evidence of an impairment in his thought process or evidence of delusions or hallucinations." Id.; see also Tr. 316. Moreover, the ALJ placed weight on Plaintiffs' Global Assessment of Functioning scores, which indicated mild-moderate symptoms or limitations. Id. at 22, 363, 367, 468, 574.[3] Substantial evidence thus supports the ALJ's foregoing determinations. See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir.1981) ("[The Court] must uphold the [ALJ's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Contending that the ALJ failed to take into account his medication side effects, Plaintiff again misses the mark. This is so because, other than a passing mention that his medications made him "sick to his stomach" (Tr. at 157), he identified no specific work-related functional limitations associated with these medications. Cf. Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002) ("Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations."). And the record is devoid of any such "serious functional limitations" regarding the side effects of Plaintiff's medications. It cannot be said, then, that the ALJ erred by omitting from his decision a discussion regarding the medication's side effects. Besides, the record shows and the ALJ noted that, on multiple occasions, Plaintiff was noncompliant with prescribed psychiatric medications, even though they caused no side effects. Tr. 22, 360, 466.

Next, Plaintiff contends that, because prior to the hearing the ALJ had read and analyzed Plaintiff's file, "[h]e had made a judgment about the final result[,] and this shows that holding

---

[3] The Global Assessment of Functioning, or GAF, is a scale that represents the clinician's judgment about a patient's psychological, social, and occupational functioning. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000). Plaintiff's score of 55 to 60 corresponds to moderate symptoms. See id.

**CIVIL NO. 11-1323 (SEC)**                                                                                          Page 7

a hearing for this claimant was a sham." Docket # 8, p. 16. This argument is meritless. It flies in the face of reason to think that the ALJ must have been biased because he reviewed the evidence of record prior to the hearing. That Plaintiff would want the ALJ to conduct a hearing without familiarizing himself with his case raises eyebrows. In any event, Plaintiff's unavailing contention contains neither a discussion nor supporting authorities, see D.P.R. Civ. R 7(a); U.S. v. Brown, 669 F.3d 10, 16 n. 5 (1st Cir.2012) (reiterating that issues adverted to in a cursory manner are deemed waived), and neither the law nor common sense supports such an incongruous result.

Without pointing to any supporting authorities, Plaintiff also faults the ALJ for not obtaining a medical expert's testimony. According to Plaintiff, "[t]he ALJ did not properly articulate how he was able to understand all the extensive medical record without help from a medical expert." Docket # 9, p. 19. This argument fails for at least two reasons. First, it is perfunctory at best. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at development argumentation, are deemed waived."). And second, it ignores the record, which evinces that the ALJ had the support of the consultative examination report of Dr. Boria, and the functional assessments of two Stage agency physicians and two State agency psychologists (Tr. 21-23, 201, 318, 328-29, 339, 340), all of whom support the ALJ's RFC finding. Plaintiff, therefore, cannot explain why the ALJ needed to consult yet another medical expert.

Having established that the ALJ committed no error in assessing Plaintiff's RFC, the Court turns to the first imputation—that the ALJ erred by concluding that he could perform past relevant work as actually and generally performed. In opposition, the Commissioner argues that Plaintiff failed to meet his burden of proving that he could not perform his past relevant work

as an "aircraft technical inspector," both as the job is generally performed in the national economy and as he actually performed it. The Court agrees with the Commissioner.

At step four, a claimant will be found not disabled when he retains the RFC to perform "the actual functional demands and job duties of a particular past relevant job." Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991) (internal quotation marks and citations omitted). The claimant has the initial burden to describe his past work and how his former work duties were compromised by his physical or mental condition. Id. "[N]ot only must the claimant lay the foundation as to what activities [his] former work entailed, but [he] must point out . . . how her functional incapacity renders her unable to perform her usual work." Id.; see also Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001) ("The applicant has the burden or production and proof at the first four steps of the [sequential evaluation] process.")

A claimant is in turn deemed capable of performing his past relevant work if his RFC allows him to do the job "[e]ither as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2); Gray v. Heckler, 760 F.2d 369, 372 (1st Cir. 1985); SSR 82-62, 1982 WL 31386, at *3. Here, Plaintiff failed to shoulder his burden of showing he could not perform his past relevant work as an "aircraft technical inspector," as the job is generally performed in the national economy. Tr. 24. The Commissioner correctly located this job in the Dictionary of Occupational Titles ("DOT"), under the title "Flight Engineer." Tr. 148. See Dep't of Labor, DOT No. 621.261-018 (4th ed. 1991), 1991 WL 685290. And, as correctly argued by the Commissioner, the job duties described in the DOT coincide with those contained in Plaintiff's account of the job. Compare id. with Tr. 146.

Crucially, the DOT classifies this job as "light" work, i.e., it involves only occasional stooping and kneeling, and no climbing, balancing, crouching, or crawling. 1991 WL 685290. Furthermore, this job entails "[e]xerting up to 20 pounds of force occasionally . . . and/or a

**CIVIL NO. 11-1323 (SEC)**                                                                                         Page 9

negligible amount of force constantly to move objects." Id. These duties are in harmony with the ALJ's RFC assessment: that Plaintiff could perform "light" work with commensurate postural limitations. Tr. 21. The ALJ, moreover, was allowed to take administrative notice of the foregoing DOT job description in order to conclude that Plaintiff could perform his past relevant work. See 20 C.F.R. § 404.1560(b)(2). Consequently, the ALJ correctly found that Plaintiff could perform his past relevant work as an "aircraft technical inspector"/"flight engineer" as that job is generally performed in the national economy.

      Assuming arguendo that the ALJ erred in concluding that Plaintiff could perform his past relevant work as generally performed in the national economy, Plaintiff nevertheless fell short of proving that he could no longer perform this job as he had actually performed it in the past. Tr. 24. The duties of a "aircraft technical inspector," Plaintiff stated, required him to stand/walk throughout the day; use "light" tools; and lift an estimated 20-25 pounds. Id. at 146.[4] Against this factual backdrop, Plaintiff failed to carry his burden of proving he could no longer perform such work with the "light" RFC assigned by the ALJ. See Santiago, 944 F.2d at 5. As factfinder charged with resolving evidentiary conflicts, the ALJ appropriately construed Plaintiff's statements regarding the use of "light tools" and lifting an estimated 20-25 pounds (Tr. 146),

---

[4] Plaintiff described his job duties as follows:

> Inspect military aircraft for malfunctions in engines, instruments, accessories, and air-conditioning systems. Make appropriate repairs and parts replacement as necessary. Had to repair metal sheet or composite surface, take measures of cables tension, check for any signs of corrosion, and check for any defect or malfunction of fuselage, wings and tail. Then, he had to make a report of the damaged and replaced parts, recommendations and scheduled next inspection. Used appropriate tools and instruments. He was stand[ing] and walking all day, used light tools. He can't tell about weight lifted but he believes that maybe 20-25 lbs.

Tr. 146.

as characteristic of a job consistent with the demands of "light work." Therefore, the ALJ's rationale is supported by substantial evidence.

In an attempt to blunt the force of this conclusion, Plaintiff relies on the wrong job description to contend that his past relevant work was incompatible with the ALJ's RFC finding. Docket # 8, pp. 9-12.  But plaintiff incorrectly cites his past relevant work description as an "aircraft mechanic," the job he held before becoming an "aircraft technical inspector." Id.; Tr. 131-32. In line with this equivocated job description, Plaintiff posits that "[t]he job that most closely resembles [his] tasks in the DOT and best describes [his] past job" is "Airframe-and-Power-Plant Mechanic," which is classified as "medium" level work. Docket # 8, pp. 10-11.

However, as elucidated above, the ALJ based his step-four finding not on Plaintiff's job as an "aircraft mechanic," but on his subsequent job as an "aircraft technical inspector" (Tr. 24). On this point, the Court ordered the parties to brief the following issue: "whether the ALJ can base his step-four finding solely on the claimant's last performed job, while completely ignoring the job the claimant did the longest." Docket # 10. Both parties agree that an ALJ can base his step-four finding on any of a claimant's prior jobs, as long as that job constitutes "past relevant work." See Dockets # 11 & 12. The ALJ, then, permissibly based his step-four finding on Plaintiff's last job as a technical inspector, a job he had performed within 15 years of the ALJ's decision (1998-2002); had worked long enough to learn the job (approximately four years); and had worked at a substantial gainful activity level. Tr. 114, 121, 131. See 20 C.F.R. § 404.1560(b)(1).

Because Plaintiff failed to meet his burden of showing he could not perform his past relevant work, the ALJ had no obligation to measure the requirements of his former job against the claimant's capabilities. Accordingly, the ALJ properly found Plaintiff not disabled.

**CIVIL NO. 11-1323 (SEC)**                                                                 **Page 11**

Finally, Plaintiff claims that the Commissioner failed to conclude that he was unable to "do any other job." Docket # 8, pp. 3-4. Put another way, Plaintiff faults the Commissioner for not proceeding to step-five. This argument is a non-starter and can be discarded out of hand. Because the Commissioner correctly denied his application for disability benefits at step four, there was no need to proceed to the next step. See 20 C.F.R. § 404.1560(b)(3) ("If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. . . .").

**Conclusion**

For the reasons stated, the Commissioner's decision denying disability benefits is **AFFIRMED**.

**IT IS SO ORDERED**

In San Juan, Puerto Rico, this 11th day of June, 2012.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge